IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-01218-LTB-MJW

EDWARD GLENN,

        Applicant,

v.

GARY GOLDER, Warden, S.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

        Respondents.

---

**RECOMMENDATION ON APPLICATION FOR A
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

        This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by  Judge Lewis T. Babcock.  (Docket No. 8).

        Before the court is the pro se incarcerated petitioner's Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 3).  The respondents timely

filed an Answer (Docket No. 11).  The court has considered the Application, the

Response, and the Exhibits thereto, as well as applicable Federal Rules of Civil

Procedure and case law.  The court now being fully informed makes the following

findings of fact, conclusions of law, and recommendation that the Application be denied

and dismissed.

        In his Application, the petitioner challenges a judgment of conviction entered in

Mesa County District Court, Case No. 00CR92, upon a jury verdict on September 19,

2000, finding him guilty of theft (class 4 felony) and eight counts of forgery by

commercial check (class 5 felony) and the court's finding petitioner guilty the next day of four habitual counts. Petitioner was sentenced to twenty-four years for the theft conviction and twelve years for each forgery conviction, all to run concurrently.

The Colorado Court of Appeals ("CCA") affirmed the judgment of conviction. People v. Glenn, No. 00CA1811 (Colo. App. Aug. 22, 2002) (Resps.' Ex. C). The court summarized the facts of the case as follows:

> The victim's checkbook and identification card were stolen from her car. Soon thereafter, a woman using the victim's identification card forged several checks at various local businesses.
>
> At trial, defendant's former girlfriend testified that defendant had given her the stolen checkbook and identification card and that he had encouraged and assisted her in passing the forged checks. She testified that she had used one of the checks to purchase a pair of boots for defendant and that he had then attempted, unsuccessfully, to return the boots for a cash refund.
>
> The owner of the boot shop identified defendant as the person who, in the company of a woman who forged a check, had purchased a pair of boots. The store owner also identified defendant as the person who had attempted to return the boots.

(Resps.' Ex. C).

The Colorado Supreme Court denied certiorari on January 21, 2003. (Resps.' Ex. E).

On July 17, 2003, the petitioner filed a Crim. P. 35(c) motion in which he sought to have his habitual criminal sentence vacated. The trial court summarily denied the motion on August 1, 2003. (Resps.' Ex. G). That denial was affirmed on appeal, People v. Glenn, No. 03CA1778 (Colo. App. Aug. 19, 2004), and the Colorado Supreme Court denied petitioner's petition for certiorari on December 27, 2004.

(Resps.' Ex. K).

Petitioner then filed the Application at issue here on June 30, 2005. He raises the following five claims for habeas corpus relief: (1) due process violation and denial of a jury determination when the judge, rather than the jury, found him to be an habitual offender; (2) the trial court erred by allowing the testimony of a witness who had been shown a suggestive photo array which included the petitioner; (3) the trial court erred when it barred him from challenging the constitutionality of the alleged prior convictions used to support the habitual offender statute; (4) the state failed to carry its burden of proof with regard to the two 1990 convictions which supported the habitual offender charge; and (5) the trial court failed to hold the proper and mandated hearing concerning his sentence as it relates to the proportionality in relation to other similarly-situated individuals.

"The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). "Under AEDPA, 'federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits.'" Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005). More specifically, 28 U.S.C. § 2254 now provides in pertinent part:

>  (d) An application for a writ of habeas corpus on behalf of a person in
>  custody pursuant to the judgment of a State court shall not be granted
>  with respect to any claim that was adjudicated on the merits in State court

proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1).

With regard to § 2254(d)(1), the U.S. Supreme Court has stated that

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. . . . A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* [*v. Taylor*, 529 U.S. 362, 409-10 (2000),] that an unreasonable application is different from an incorrect one. . . . See also *id.*, at 411 . . . (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694. "Avoiding these pitfalls does not require citation of

[Supreme Court] cases-indeed, it does not even require *awareness* of our cases, so

long as neither the reasoning nor the result of the state-court decision contradicts

them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). "Furthermore, under § 2254(d)(1), the only 'federal law' [the court] consider[s] is 'clearly established federal law as determined by decisions, not dicta, of the Supreme Court.' . . . Thus, 'an absolute prerequisite for [a habeas petitioner's] claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent.'" <u>Parker v. Scott</u>, 394 F.3d at 1308.

With the above standards in mind, this court will review the petitioner's five claims for habeas corpus relief.

**<u>Claim One</u>**

In his first claim for relief, petitioner alleges violations of the Fifth, Sixth, and Fourteenth Amendments as a result of the trial judge, rather than the jury, finding petitioner to be an habitual offender. This court agrees with respondents that this claim lacks merit. Petitioner cites <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), in support of his claim, but <u>Apprendi</u> actually forecloses his argument. "In *Apprendi*, the Supreme Court held that '**other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" <u>United States v. Leonard</u>, 2002 WL 31516890, *4 (10th Cir. Nov. 13, 2002), <u>cert. denied</u>, 537 U.S. 1240 (2003) (quoting <u>Apprendi</u>, 530 U.S. at 490)) (emphasis added). The "prior conviction" exception to <u>Apprendi</u> procedures was based upon the Supreme Court's earlier ruling in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). The Tenth Circuit Court of Appeals recently noted that while "*Apprendi* mentioned the possibility that

'*Almendarez-Torres* was incorrectly decided,' . . .and other members of the Court have since seconded this concern, . . . it has continually reaffirmed the recidivism exception announced in *Apprendi.* . . . The Supreme Court may overrule *Almendarez-Torres* some day, but we may not 'presume to do so for the Court.'" Hunter v. Werholtz, 505 F.3d 1080, 1082 n.1 (10th Cir. 2007) (citations omitted).

Here, the CCA found that

> The trial court correctly concluded that defendant was not entitled to relief under Apprendi. See Apprendi v. New Jersey, supra, . . . ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); People v. Carrasco, 85 P.3d 580 (Colo. App. 2003) (habitual criminal counts may be tried to the court without violating the principles announced in Apprendi); People v. Gilmore, ___ P.3d ___ (Colo. App. No. 01CA0120, July 2, 2003) (same); People v. Johnson, 74 P.3d 349 (Colo. App. 2002) (same).
>
> Because the court properly denied defendant's motion as a matter of law, it was not required to hold a hearing. . . .

(Resps. Ex. I). "In Colorado, determination of whether a defendant is a repeat offender or habitual criminal rests solely upon whether the defendant has prior convictions. Thus *Apprendi* did not require the jury to determine whether [petitioner] had prior convictions which could be used to enhance his sentence. Consequently, the [CCA's] determination was not contrary to, nor an unreasonable application of, Supreme Court precedent." Gilmore v. Dunbar, 2008 WL 544737 (D. Colo. Feb. 26, 2008). Therefore, petitioner's first claim for habeas relief is without merit.

**Claim Two**

In Claim Two, petitioner asserts that the trial court erred by allowing the

testimony of a witness who had been shown a suggestive photo array which

included the petitioner in violation of the Fourth, Fifth, Sixth, and Fourteenth

Amendments.  "When the constitutionality of a photo array is challenged, the due

process clause requires a two-pronged inquiry: first, the court must determine

whether the photo array was impermissibly suggestive, and if it is found to be so,

then the court must decide whether the identifications nevertheless were reliable in

view of the totality of the circumstances." Borghesi v. Watkins, 2008 WL 410585, at

*5 (D. Colo. Feb. 13, 2008) (citing Simmons v. United States, 390 U.S. 377, 384

(1968); United States v. Sanchez, 24 F.3d 1259, 1261-62 (10th Cir. 1994); Johnston

v. Makowski, 823 F.2d 387, 391 (10th Cir. 1987)).  "These two prongs must be

analyzed separately, and it only is necessary to reach the second prong if the court

first determines that the array was impermissibly suggestive." Id.  Furthermore,

"[r]elevant factors in evaluating whether a pretrial photographic identification

procedure is impermissibly suggestive include the size of the array, the manner of its

presentation by the officers, and the details of the photographs themselves." Id.

In this case, the state court evaluated whether the array was impermissibly

suggestive.  The CCA disagreed with petitioner's argument that the trial court erred

by allowing the store owner to identify him at trial because the store owner had

previously selected petitioner's photograph from an impermissibly suggestive array.

The court stated:

> Convictions based on eyewitness identification at trial following a
> pretrial identification by photograph will be set aside on that ground only
> if the photographic identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification. If a defendant does not carry his burden of showing that the photo array was impermissibly suggestive, no further inquiry is necessary. Bernal v. People, 44 P.3d 184 (Colo. 2002).

In evaluating whether a pretrial photo identification procedure is impermissibly suggestive, a number of factors may be relevant, including the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves. Where, as here, the number of photographs shown has not been so small as to make the presentation itself unfairly suggestive, and there is nothing in the officials' manner of presentation that renders the procedure surrounding the array suggestive, the principal question is whether the picture of the accuse, which matches descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit. Bernal v. People, supra.

The police do not have to provide a photo array containing only exact replicas of the defendant's picture; all that is required is that the photos are matched by race, approximate age, facial hair, and a number of other characteristics. It is not required that all of the photographs in the array be uniform with respect to one given characteristic. Bernal v. People, supra.

The ultimate question as to the constitutionality of pretrial identification procedures is a mixed question of law and fact. Although the trial court's findings of historical fact are entitled to deference, its legal conclusions are subject to de novo review by an appellate court. Bernal v. People, supra.

Here, the photographic array consists of eight color photographs of identical dimensions. All eight men depicted in the photographs appear to be of the same race and approximately the same age. All eight men have similar facial structure. The photograph of defendant shows a man with a shaved head, a light moustache, and beard stubble. Three of the other men in the array have shaved heads (one of those men has longer hair growing from the back of his head), four of the men have short hair, five of the men have thin moustaches, and one man has a beard that is shaved low along his jaw line.

We reject defendant's claim that the differences in the men's facial hair or in the length of their hair were so great as to render the

array suggestive. In our view, all eight men look fairly similar. Moreover, we note that the record supports the trial court's finding that, before viewing the photographic array, the store owner was advised that "hair styles, beards and mustaches [sic] may be easily changed."

We also reject defendant's assertion that the photograph of him "jumps out" because "he is the only suspect depicted whose head is bent down, or leaning forward at an angle." Although it is true that defendant was in a slightly different position relative to the camera when he had his picture taken, this discrepancy is not especially noticeable because the other seven men were not identically situated when they were photographed, and all eight men were photographed against the same gray background without any objects or markings that would indicate height.

(Resps.' Ex. C). This court finds that the state court's ruling that the photo array was not impermissibly suggestive did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or resulted in an unreasonable determination of the facts presented in the state court proceeding. Therefore, the second claim for habeas relief is without merit.

**Claim Three**

Petitioner next asserts, in Claim Three, that the trial court erred when it barred him from challenging the constitutionality of the prior convictions used to support the habitual offender statute, which allegedly violated petitioner's constitutional right to put forth a defense. The trial court found that the plaintiff's challenges to his four prior convictions were untimely pursuant to § 16-5-402, C.R.S. (three-year time limit to collaterally challenge all but class one felonies). Petitioner asserted before the state courts that he had justifiable excuse or excusable neglect for failing to make a timely challenge to his prior convictions because he had been incarcerated for all but

fewer than 12 months of the time period for making a collateral attack and because

he had not been advised by his attorneys about his ability to collaterally attack the

convictions and had no independent knowledge about his ability or need to

challenge the prior convictions.

The CCA found the following with respect to petitioner's claim:

Defendant next argues that the trial court erred by concluding that he was time barred from collaterally attacking the prior convictions underlying the habitual criminal counts. Again, we disagree.

Section 16-5-402, C.R.S. 2001, provides, as relevant here, that a defendant has three years from the date of his conviction in which to commence a collateral attack.

If a defendant's motion for postconviction relief is untimely under § 6-5-402, then the trial court may deny the motion without conducting a hearing if the defendant has failed to allege facts that, if true, would establish justifiable excuse or excusable neglect. . . . Contrary to defendant's suggestion, this pleading requirement pertains to all untimely motions whether filed in the case in which the conviction was sustained or in the case in which the prior conviction is to be used. . . .

Here, four habitual criminal charges were filed in February 2000 based on the following prior Colorado felony convictions: (1) a 1989 conviction for escape from community corrections; (2) two 1990 convictions, one for first degree criminal trespass and the other for theft; (3) a 1992 conviction for second degree burglary; and (4) a 1991 conviction for criminal impersonation.

Prior to trial, defendant filed a motion in this case, "pursuant to CRCP 35 (c)," seeking to challenge the validity of his prior convictions. In that motion, defendant argued that the time bar should not preclude him from attacking his prior convictions because he had been incarcerated for most of the time since the convictions were sustained, he was previously unaware that he had the ability to contest the convictions, he was not represented by postconviction counsel, the attorneys who had represented him in connection with his prior convictions never advised him regarding the possibility of collateral attack, and he had no need to challenge the convictions until charges

were filed in this case.  The trial court denied defendant's motion as time barred without conducting an evidentiary hearing, concluding defendant had failed to allege grounds that, if true, would constitute justifiable excuse or excusable neglect.

We conclude that none of defendant's explanations for his inaction, if true, would constitute justifiable excuse or excusable neglect.  See People v. Mershon, 874 P.2d 1025, 1036-37 (Colo. 1994) (present need to challenge prior convictions created by enactment of § 16-5-402); People v. Green, 36 P.3d 125, 128 (Colo. App. 2001) (ignorance or misunderstanding of the law and lack of legal assistance does not excuse the late filing of a Crim. P. 35(c) motion); People v. Rowe, 837 P.2d 260 (Colo. App. 1992) (neither indigence nor previous counsel's failure to advise concerning collateral relief constitutes justifiable excuse or excusable neglect), rev'd on other grounds, 856 P.2d 486 (Colo. 1993).  Accordingly, we uphold the trial court's determination that defendant was time barred from collaterally ttacking his prior conviction.

(Resps.' Ex. C).

"It is well established that states may place reasonable time limitations on the assertion of federal rights."  Lankford v. Novac, 7 Fed. Appx. 867, 868 (10th Cir. 2001) (citing Francis v. Henderson, 425 U.S. 536, 540-41 (1976); Michel v. Louisiana, 350 U.S. 91, 97-98 (1955); People v. Wiedemer, 852 P.2d 424, 436-40 (Colo. 1993) (rejecting due process and equal protection challenges to § 6-5-402)).  Furthermore, "[w]hether a defendant has demonstrated 'justifiable excuse or excusable neglect' is a factual matter determined in accordance with state law, specifically the standards in Wiedemer, 852 P.2d at 441-42, and People v. Heitzman, 852 P.2d 443, 447-48 (Colo. 1993)."  Id.  As noted above, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by

a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, the petitioner has not rebutted that presumption with regard to the state court's determination that he did not demonstrate justifiable excuse or excusable neglect. This court finds that the state court's ruling was not contrary to or involved an unreasonable application of clearly established federal law or resulted in an unreasonable determination of the facts presented in the state court proceeding. Therefore, this court finds no merit to the petitioner's third claim for habeas relief.

**Claim Four**

In his fourth claim for habeas relief, petitioner contends that the state failed to carry its burden of proof with regard to the two 1990 convictions which supported the habitual offender charge, which petitioner asserts violates the Fifth, Sixth, and Fourteenth Amendments.

The CCA concluded that "the record supports the trial court's judgment to the contrary." (Resps.' Ex. C). The court stated:

> Defendant was charged as an habitual criminal under the following section:
>
> Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes . . . in this state . . . shall be adjudged an habitual criminal and shall be punished for the felony offense of which such person is convicted by imprisonment in a correctional facility for a term of four times the maximum of the presumptive range pursuant to section 18-1-105, C.R.S., for the class of felony of which such person is convicted.

Section 16-13-101(2), C.R.S. 2001.

In any habitual criminal action the prosecution bears the burden of proving beyond a reasonable doubt that the accused is the person named in the prior convictions. Section 16-13-103(5)(b), C.R.S. 2001, governs the admission of evidence in habitual criminal proceedings. It provides that a duly authenticated copy of the record of former convictions and judgments is prima facie evidence of the convictions and may be used as evidence at the habitual offender sentencing. However, this section does not establish the exclusive method for proving prior convictions. The prosecution may also carry its burden of proof by using certified copies of public records or documents that are admissible as public records under CRE 901(b)(7) or self-authenticating documents under CRE 902(1) and (4). . . .

Here, the first habitual criminal count was based on defendant's escape conviction. As proof of this conviction, the prosecution introduced records certified by the custodian of records for the Department of Corrections (DOC). The records included a copy of the mittimus and a DOC booking sheet that referenced the same case number. The booking sheet contained the photograph and fingerprints of a person with the same name as defendant. Through testimony, the prosecution established that defendant was in fact the person named in the booking sheet.

The prosecution used similar evidence to prove both the third habitual criminal count (based on defendant's conviction for second degree burglary) and the fourth habitual criminal count (based on defendant's conviction for criminal impersonation).

To prove the second habitual criminal count, based on defendant's 1990 convictions for first degree criminal trespass and theft in case 90CR333, the prosecution introduced a certified copy of that judgment of conviction. The prosecution was then able to link that judgment of conviction to the fingerprint and photograph evidence introduced in connection with defendant's burglary conviction and his criminal impersonation conviction because the mittimus in the burglary conviction and the mittimus in the criminal impersonation case both specified that the sentences imposed in those cases were to be served concurrent with the sentence in "case 90CR333."

We conclude this evidence was sufficient to prove beyond a reasonable doubt that defendant was the person convicted in all of the

prior cases on which the habitual criminal counts were based. . . . .

(Resps.' Ex. C).

"The test for a sufficiency-of-the-evidence claim on federal habeas corpus review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Borghesi v. Watkins, 2008 WL 410585, *7 (D. Colo. Feb. 13, 2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Because the CCA reached the merits of the sufficiency of the evidence question, this court must apply the AEDPA's deferential standard of review. Patton v. Mullin, 425 F.3d 788, 796 (10th Cir. 2005), cert. denied, 547 U.S. 1166 (2006). "Thus, the question before [the court] is whether the [CCA's] conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." Id.

Petitioner has failed to rebut by clear and convincing evidence the CCA's recitation of the evidence concerning his prior convictions. Therefore, the court's statement of facts concerning the petitioner's prior convictions is accepted as correct. The CCA's decision that the evidence was sufficient to prove beyond a reasonable doubt that the petitioner was the person convicted in all of the prior cases on which the habitual criminal counts were based did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or result in an unreasonable determination of the facts presented in the state court proceeding.

To the extent petitioner may very well be complaining of a violation of state

evidence rules, "[g]enerally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief." <u>Bullock v. Carver</u>, 297 F.3d 1036, 1055 (10th Cir. 2002). Petitioner has not shown that admission of the evidence rendered the trial fundamentally unfair. <u>Id.</u>

In sum, this court finds no merit to the petitioner's fourth claim.

**<u>Claim Five</u>**

In petitioner's last claim for relief, he asserts that the trial court failed to hold the proper and mandated hearing concerning his sentence as it relates to the proportionality in relation to other similarly-situated individuals, thereby denying petitioner due process of law and equal protection under the law. The CCA found the following with respect to this claim:

> Finally, defendant contends the trial court erred by conducting an abbreviated, rather than a full, proportionality review of his sentence. Defendant also challenges the trial court's determination that a twenty-four-year sentence is proportionate in this case. We perceive no error in the trial court's method of analysis or in its conclusion.
>
> A proportionality review requires a comparison of the nature and number of offenses committed with the severity of the punishment imposed upon the defendant. When the crimes supporting an habitual criminal sentence include grave or serious offenses and a defendant will become eligible for parole, only an abbreviated review is required. . . .
>
> An abbreviated review consists of a scrutiny of the offenses in question to determine whether, in combination, they are so lacking in gravity or seriousness as to suggest that the sentence is constitutionally disproportionate to the crime. . .
>
> . . .
>
> In this case, the trial court sentenced defendant to the custody of

the DOC for twenty-four years four times the maximum presumptive range sentence for the class four felony of theft under §§ 18-1-105(1)(a)(V)(A) and 18-4-401(2)(c), C.R.S. 2001. The court also sentenced defendant to twelve years on each of the eight forgery convictions, four times the maximum presumptive range sentence for a class five felony. However, the court imposed those sentences concurrent with the longer theft sentence.

Defendant argues that he was entitled to a full proportionality review because none of his convictions were for serious or violent offenses. We disagree.

In conducting its abbreviated proportionality review, the trial court concluded that the triggering offenses committed in this case were serious because they involved repeated criminal conduct committed over the course of several days. We concur in this assessment.

We also agree with the trial court's determination that, in combination, defendant's prior convictions were not lacking gravity or seriousness. See People v. Mershon, supra, 874 P.2d at 1032 (theft is a serious felony for proportionality purposes when it is one of a variety of prior offenses); Alvarez v. People, 797 P.2d 37, 38, 41-42 (Colo. 1990) (second degree burglary is a serious prior offense); People v. Medina, supra, 926 P.2d at 151 (escape from a community corrections facility is not a minor offense). Although defendant's conviction for criminal impersonation may not be particularly serious relative to other types of crimes, we noted that defendant would have been subject to habitual criminal sentencing even without this conviction. See People v. Mershon, supra, 874 P.2d at 1032 n.3 (an habitual criminal sentence based on the requisite number of serious offenses that is otherwise proportionate does not become disproportionate merely because an additional conviction is determined not to be grave or serious).

In summary, we agree with the trial court that twenty-four years with the possibility of parole is not a constitutionally disproportionate sentence for a repeat offender who has accrued fourteen felony convictions in only a dozen years.

(Resps.' Ex. C).

A sentence does not violate the Eighth Amendment unless it is grossly

disproportionate to the crimes. Hawkins v. Hargett, 200 F.3d 1279, 1282-83 (10th Cir.

1999).  "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."  Lockyer v. Andrade, 538 U.S. 63, 77 (2003).  See Rummel v. Estelle, 445 U.S. 263, 272 (1980) (In noncapital cases "successful challenges to the proportionality of particular sentences have been exceedingly rare."); United States v. Angelos, 433 F.3d 738, 750 (10th Cir. 2006) ("Although the Supreme Court has reviewed Eighth Amendment challenges to a number of state and federal sentences, it has struck down only two of them over the past century."),[1] cert. denied, 127 S. Ct. 723 (2006).   In determining whether there is "gross disproportionality," the Tenth Circuit has weighed "a variety of factors, including the seriousness of the crime, the fit between the punishment and the crime, and the existence of legislative determinations of an appropriate sentence range."  Milburn v. Hines, 146 Fed. Appx. 269, **2 (10th Cir. Aug. 17, 2005) (citing Hawkins, 200 F.3d at 1284-85).  The instant case is not one of the rare "extraordinary" cases where the sentence is grossly disproportionate to the crimes for which they were imposed.  In light of the nature of the petitioner's crimes, as well as the Supreme Court's benchmarks, and the legislature's proper role in setting sentencing ranges, this court cannot say that the petitioner's sentence here is grossly disproportionate to the acts he committed.

---

[1]More specifically, "[i]n Weems v. United States, 217 U.S. 349, 367 . . . (1910), the Court invalidated under the Eighth Amendment a sentence of fifteen years in chains and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a public document.  Seventy-three years later, in Solem v. Helm, 463 U.S. 277 . . . (1983), the Court invalidated under the Eighth Amendment a sentence of life imprisonment without the possibility of parole imposed under South Dakota law against a nonviolent recidivist whose final crime was writing a "no account" check with the intent to defraud."  United States v. Angelos, 433 F.3d at 750.

More specifically, petitioner's current offenses (theft and forgery, which involved repeated criminal conduct committed over the course of several days), viewed together, were serious.  In addition, his prior convictions included burglary, escape, criminal trespass, and theft, which, in combination, do not lack gravity or seriousness.  Furthermore, petitioner's sentence (24 years and concurrent 12-year sentences) was within the statutorily-permitted range.  See Hawkins, 200 F.3d at 1285 (Tenth Circuit is "reluctant to interfere with the legislative determination of an appropriate sentence range.).  Also, based upon Supreme Court benchmarks, this court cannot say that the petitioner's sentence here is so grossly disproportionate to the acts he committed.  See Lockyer v. Andrade, 538 U.S. 63 (2003) (It was not an unreasonable application of Supreme Court's clearly established law for the California Court of Appeals to affirm the habeas petitioner's sentence of two consecutive terms of 25 years to life in prison for stealing videotapes worth approximately $150 from two K-Mart stores); Ewing v. California, 538 U.S. 11 (2003) (25-year to life sentence imposed under a recidivist statute for felony grand theft - stealing three golf clubs worth approximately $1,200); Rummel v. Estelle, 445 U.S. 263 (1980) (a life sentence with the possibility of parole was not disproportionate for a three-time non-violent recidivist who had successive convictions of fraudulent use of a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses).  An evidentiary hearing was not required inasmuch as the disproportionality analysis could be done from consideration and review of the petitioner's recidivist status and the nature of his current and prior convictions.  As noted by the CCA,

petitioner was a repeat offender who had accrued fourteen felony convictions in only a dozen years.

Based upon these findings, petitioner's fifth claim should be dismissed. This court cannot find that the CCA's decision was contrary to or involved an unreasonable application of clearly established federal law or resulted in an unreasonable determination of the facts presented in the state court proceeding.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket No. 3) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:     April 11, 2008          s/ Michael J. Watanabe
           Denver, Colorado       Michael J. Watanabe
                                   United States Magistrate Judge